```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
```

|                                   |   |                      |
|-----------------------------------|---|----------------------|
| MAUREEN LAPPEN,                   ) |   |                      |
|     Plaintiff, ) |   |                      |
|                                   ) |   |                      |
|   v.                    ) |   | CIVIL ACTION         |
|                                   ) |   | NO. 09-11857-WGY     |
| MICHAEL J. ASTRUE, as he is       ) |   |                      |
| Commissioner, Social Security     ) |   |                      |
| Administration,                   ) |   |                      |
|                                   ) |   |                      |
|     Defendant. ) |   |                      |

<u>MEMORANDUM AND ORDER</u>

YOUNG, D.J.                                          June 15, 2011

**I.   INTRODUCTION**

The plaintiff, Maureen Lappen ("Lappen"), brings this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). Lappen challenges the decision of Administrative Law Judge John F. Markuns (the "hearing officer") denying her application for Social Security Disability Insurance Benefits. She argues that the Commissioner's decision was not based on substantial evidence, specifically claiming that the hearing officer "misstated the findings of the medical expert" and found that the "Claimant's subjective complaints [were] not credible without supporting this conclusion with specific facts and substantial evidence." Mem. L. Supp. Pl.'s Mot. Reverse or Remand 3, ECF No.

13 ("Lappen Mem."). Lappen requests that this Court reverse the decision of the Commissioner or, in the alternative, remand the case to the Commissioner. Compl., ECF No. 1. The Commissioner filed a motion for an order confirming his decision. ECF No. 14.

A.  **Procedural Posture**

Lappen applied for Social Security Disability Insurance Benefits on March 28, 2007, alleging a disability commencing on January 1, 2003. Admin. R. 135-137. On July 2, 2007, the Commissioner denied Lappen's claim. Id. at 90. Lappen's timely request for reconsideration was denied on July 25, 2008. Id. at 69. Lappen requested an oral hearing on August 14, 2008; the hearing took place before hearing officer John F. Markuns on February 18, 2009. Id. at 7. The hearing officer issued a decision unfavorable to Lappen on May 21, 2009, stating that Lappen was not disabled within the meaning of the Social Security Act from the alleged onset date through the date last insured. Id. at 7-17. The hearing officer's decision was selected for review by the Decision Review Board, but the Board did not complete its review within the prescribed ninety-day period. Id. at 1-3. Consequently, the hearing officer's decision became the final decision of the Commissioner. Id.; see 20 C.F.R. § 405.420(a)(2). On October 30, 2009, Lappen filed the present action with this Court to review the decision of the Commissioner.

**B.   FACTUAL BACKGROUND**

Lappen was born on April 25, 1960.  Admin. R. 135.  She has completed two years of college.  Id. at 170.  She worked for several years as a registered nurse and nursing assistant, and was most recently employed as a clerical assistant at a packaging and supply company from 1999 to 2002.  Id. at 172.

In March 2000, Lappen began seeing Dr. Kirk Lum ("Dr. Lum"). Id. at 371.  She reported on her initial psychiatric evaluation that she was feeling depression and anxiety in the context of a divorce, that such depression was noted as early as thirteen years of age, and that for the past five years, her depression had been in remission.  Id. at 379.  In May 2000, Dr. Lum diagnosed Lappen with bipolar disorder, and prescribed her a trial of Depakote.  Id. at 381-82.  Dr. Lum continued to see Lappen until October 2000, when he assigned her a global assessment of functioning score of 70, Id. at 392-93, which represents a person with only some mild symptoms.  Mem. L. Supp. Comm'r's Mot. Order Affirming His Decision 6 n.3, ECF No. 15.

Dr. Emanuel Chris ("Dr. Chris") began to see Lappen in September 2005.  He diagnosed her with a major depressive disorder and prescribed Fluoxetine and Trazodone.  Admin. R. 348. Two weeks later, Dr. Chris saw Lappen at a follow-up appointment and reported improvement in mood, anxiety, and sleeplessness. Id. at 346.  At the onset of her treatment with Dr. Chris, Lappen

experienced improvement in several areas, including mood, affect, anxiety, and communicativeness. <u>Id.</u> at 344-46. Dr. Chris terminated his relationship with Lappen on January 18, 2007, however, citing Lappen's failure to keep her appointments. <u>Id.</u> at 317. In addition, Lappen had been in alcohol treatment from January 13 to January 18, 2007, and admitted that she had been drinking heavily, which she had never told Dr. Chris. <u>Id.</u> at 310, 317. Over the course of his treatment of Lappen, Dr. Chris slightly adjusted her drug treatment, but for the large part, her regimen consisted of Fluoxetine and Trazodone, with a period of Lamictal, a mood stabilizer, and trials of various sleep aids. <u>Id.</u> at 317-46. In his final write-up for Lappen on May 1, 2007, Dr. Chris reported that aside from lying about her alcoholism, Lappen's adaptive functioning, concentration, and memory were all good. <u>Id.</u> at 313.

On May 9, 2007, Dr. Jane Metcalf ("Dr. Metcalf") prepared a Psychiatric Review Technique Form ("PRT") and a Residual Functional Capacity Assessment ("RFC") for Lappen. <u>Id.</u> at 350-67. In the "Summary Conclusions" portion of the RFC, Dr. Metcalf concluded that Lappen was either "not significantly limited" or "moderately limited" in all respects; Lappen's ailments did not "markedly limit" any facets of her functioning. <u>Id.</u> at 350-51. Dr. Metcalf elaborated on her residual functional capacity assessment: "[Lappen] [c]an understand simple instructions . . .

4

sustain adequate focus/pace on simple tasks . . . relate with [a] supportive, consistent supervisor . . . [and] work in [a] low stress work setting." Id. at 352.

Lappen reported in March 2007 that because of her depression, she could not "do [her] daily living or get out of bed," and that because of her anxiety she could not concentrate. Id. at 163. She said that her anxiety and depression made her unable to hold a job. Id. Before the hearing officer, Lappen testified that she "couldn't even get out of bed half the time," could not concentrate, and was anxious. Id. at 37. She also admitted lying to her doctors about her alcohol abuse, citing a fear that the Department of Social Services would try to take her children away from her. Id. at 39. She denied having a history of "alcohol abuse," however, despite more than one doctor having concluded that she had an alcohol problem and her having sought alcohol treatment on two separate occasions. Id. at 31-32, 40.

At the hearing, a medical expert, Dr. Alfred Jonas ("Dr. Jonas") testified that after reviewing Lappen's record of alcohol abuse, he "didn't see anything that looked . . . like a reliable description of any considerable impairment" and that "there probably [were] not meaningful impairments there." Id. at 47. Dr. Jonas' testimony regarding Lappen's bi-polar disorder was varied: at one point he stated: "at her worst, she probably [meets or equals a listing]." Id. at 50. Later, he qualified

this conclusion, testifying that, given her record, it was impossible to tell exactly what contributed to her instability. Id. at 50, 53, 55.

Richard Hall ("Hall"), a vocational expert, also testified at the hearing. Id. at 57. The hearing officer presented Hall with a hypothetical individual of the same age as Lappen and with similar education, work experience, physical restrictions, postural restrictions, and a limitation on task difficulty and environmental stress. Id. at 60-61. Hall testified that such a hypothetical individual would be able to perform a number of jobs, including mail clerk, marker, and order caller, and that such jobs exist in significant numbers in the national and regional economies. Id. at 63.

## II. LEGAL STANDARD

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner; "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to "uphold the

[Commissioner's] findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation mark omitted). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because, under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**B. Social Security Disability Standard**

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R § 404.1520(a)(4). The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.

The claimant bears the burden at the first four steps of showing that she is disabled within the meaning of the Act. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Once the claimant has established that she is unable to return to her former employment, the burden shifts to the Commissioner at the fifth step to prove that the claimant is able to perform jobs that exist in significant numbers in the national economy. Id.

**III. THE HEARING OFFICER'S DECISION**

The hearing officer found, at the first step, that Lappen had not engaged in substantial gainful activity since January 1, 2003. Admin. R. 9. At the second step, the hearing officer

found that Lappen's fecal incontinence, bipolar disorder, obesity, and history of alcohol abuse constituted severe impairments during the relevant time period. Id. At the third step, the hearing officer found that none of Lappen's impairments met or were medically equal to any of the impairments listed in Appendix 1 of Subpart P of Part 404. Id. at 10. At the fourth step, the hearing officer held that Lappen retained the residual functional capacity to perform light work in close proximity to a restroom, limited nonexertionally to simple, routine, and repetitive one to three step tasks with occasional changes in work setting and occasional interaction with the public and coworkers. Id. at 11-12. At the fifth, step, based on this residual functional capacity and the testimony of the vocational expert, the hearing officer found that Ms. Lappen could perform work that exists in significant amounts in the national economy, including jobs such as mail clerk, order caller, and marker. Id. at 16. The hearing officer therefore concluded that Lappen had not been disabled since January 1, 2003. Id. at 17.

**IV. ANALYSIS**

Lappen disputes the hearing officer's findings, arguing that he misstated the findings of the medical expert who testified at the hearing and that he found Lappen's subjective complaints not credible without supporting that conclusion with specific facts and substantial evidence.

### A. Medical Expert

Lappen contends that the hearing officer misstated the testimony of the medical expert. Dr. Jonas, the medical expert who testified at the hearing, evaluated all of the medical evidence beforehand, and was available for cross-examination. Dr. Jonas opined, in response to the hearing officer's questioning, as to whether Lappen met a listed disability. Lappen argues that the administrative record clearly indicates that Dr. Jonas could not, and did not, render a dispositive opinion as to the severity of Ms. Lappen's mental health impairments. This, on its own, is not an incorrect statement. Dr. Jonas' testimony is fraught with lacunae, and it is quite clear that Dr. Jonas could not specifically identify the severity of Lappen's ailments. He testified that he needed more data to assess her level of dysfunction. See Admin. R. at 47–57.

Be that as it may, it is the Commissioner's charge to weigh the evidence and to resolve material conflicts in the testimony. See Richardson v. Perales, 402 U.S. 389, 400 (1971); Gonzalez Garcia v. Sec'y of Health & Human Servs., 835 F.2d 1, 2 (1st Cir. 1987) ("[C]onflicts in the evidence are for the [hearing officer] to resolve."). He can make reasonable assumptions and inferences based on the sworn testimony of an examining expert, and here, the hearing officer did exactly that. Dr. Jonas' forthright testimony speaks to the varying impediments endured by Lappen as

a consequence of her various conditions and the uncertainty
surrounding those impediments. The hearing officer, based on
that testimony carried out his duty to evaluate the available
evidence and decided that Lappen had not carried her burden of
proving that she was disabled. Especially in a scenario where
the claimant bears the burden of proof, this Court will not
disturb a finding the hearing officer made while he was
performing his evidentiary duty. Thus, the Court concludes that,
notwithstanding the equivocal testimony of Dr. Jonas, the hearing
officer's decision was supported by substantial evidence.

    **B.    Subjective Complaints**

The hearing officer's findings with respect to Lappen's
subjective complaints were likewise proper. The hearing officer
based his credibility determination on the whole record. He
determined that her complaints were not supported by objective
medical evidence, specifically citing Dr. Jonas's testimony that
he did not see anything in the record that supported Lappen's
testimony that she would have difficulty getting out of bed five
days out of seven and Lappen's lack of candor with her treating
sources. Admin. R. 13. The hearing officer also noted that,
although Lappen claimed to not be able to get out of bed on most
days, the medical evidence showed that she had engaged in
activities outside her home, including working with a personal
trainer. Id. Lastly, Lappen's own untruthfulness in her

11

interactions with her doctors diminished the credibility of her subjective complaints.  Id.  Based on these considerations, the hearing officer's decision not to credit Lappen's subjective complaints was supported by substantial evidence, and this Court will not disturb that result.

**V. CONCLUSION**

For the reasons stated above, this Court DENIES Lappen's motion to reverse or remand, ECF No. 12, and ALLOWS the Commissioner's motion for an order affirming his decision.  ECF No. 14.  Judgment shall enter for the Commissioner.

**SO ORDERED.**

                                     **/s/ William G. Young**
                                     **WILLIAM G. YOUNG**
                                     **DISTRICT JUDGE**